IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARK RENDINA,              *

     *Pro Se* Plaintiff,       *

v.                     *

                               Civil Action No.: RDB-06-3083

MICHAEL LEAVITT, Secretary,   *    Consolidated Case No.: RDB-06-1223
U.S. Department of Health &
Human Services,         *

     Defendant.         *

*   *   *   *   *   *   *   *   *   *   *   *   *

## <u>MEMORANDUM OPINION</u>

Plaintiff Mark Rendina ("Rendina" or "Plaintiff"), proceeding in proper person, initiated

two employment actions against Defendant Michael Leavitt, in his capacity as Secretary of the

U.S. Department of Health and Human Services, Centers for Medicare and Medicaid Services

("CMS" or "Defendant"), which this Court consolidated on March 9, 2007. Rendina seeks to

hold CMS liable for discriminating against him based on his sex and terminating him in

retaliation for his testimony in another employment action, in violation of Title VII of the Civil

Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e, *et seq*. Rendina also claims

that CMS discriminated against him in violation of the Americans with Disabilities Act, 42

U.S.C. §§ 12101, *et seq*. ("ADA"). Finally, he alleges that CMS violated his rights under the

Privacy Act of 1974, 5 U.S.C. § 552a, and the Administrative Procedure Act ("APA"), 5 U.S.C.

§§ 551, *et seq*. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

Pending before this Court is Defendant's Motion to Dismiss or, in the alternative, for Summary

Judgment. The parties' submissions have been reviewed and no hearing is necessary. *See* Local

Rule 105.6 (D. Md. 2004). For the reasons that follow, Defendant's Motion for Summary

Judgment is GRANTED as to Counts I, II, and III of Plaintiff's Complaint, Count IV is

DISMISSED for lack of subject matter jurisdiction and Count V is DISMISSED pursuant to

Federal Rule of Civil Procedure 12(b)(6).

## BACKGROUND

This Court reviews the facts of this case in the light most favorable to the party opposing

the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

For a period of six months, specifically from August 10, 2003 to February 4, 2004,

Plaintiff Mark Rendina was employed as a Health Informatics Specialist in the Office of Health

Insurance Portability and Accountability Standards ("OHS") in the Centers for Medicare and

Medicaid Services ("CMS").  (Tully Decl. Ex. 1, at 2 [hereinafter "Report of Investigation"].)  A

few months after Rendina began work at OHS, one of his co-workers, ****Captain Cynthia

Wark ("Wark"), shared her concerns about Rendina's lagging job performance with Joan Trudel

("Trudel"), the Acting Director of OHS.  (Report of Investigation at Ex. F4, ¶ 9.)  For example,

she alleged that Rendina turned in work that was either incomplete or had serious inaccuracies.

(Wark Supplemental Decl. ¶¶ 3-4, 6-7; Wark Aff. ¶ 10; Trudel Aff. ¶ 10.)  In addition,

coworkers complained that Rendina was not willing to assist others and was frequently out of the

office.  (Wark Aff. ¶ 13; Bradford Aff. ¶ 7.)

In her July 22, 2004 affidavit, Trudel testified that she performed an informal search for

the published works listed in Plaintiff's *curriculum vitae* because of a perceived discrepancy

between his academic background and his lagging job performance.  (Report of Investigation at

Ex. F3, ¶ 12.)  After performing a search for Plaintiff's name using an internet search engine,

Trudel discovered a news article from fourteen months earlier reporting that a "Mark Rendina"

had been charged with identity fraud and obtaining property under false pretenses.  (Report of Investigation at Ex. F7g, pp. 2-3.)  Trudel shared her concerns about Rendina's possible criminal record and data access with a Human Resources Specialist at CMS, who investigated Plaintiff's computer usage.  (Trudel Aff. ¶ 12.)  As a result of that investigation, a list of internet usage statistics allegedly describing Rendina's internet activity indicated numerous hits for websites depicting material of a sexual nature.  (Report of Investigation at Ex. F7f, pp. 2-17.)  Plaintiff denied these claims, stating that he "never intentionally browsed any 'adult', 'pornographic', or 'gambling' websites from [his] work computer."  (Rendina Aff. ¶ 5.)

On January 21, 2004, Rendina received a letter from Trudel informing him that he would be terminated effective on February 4, 2004.  The letter informed Rendina that, "[y]our work performance alone was an issue warranting serious concern.  However, I recently learned that you have used your government issued computer to search sexually explicit websites."  (Report of Investigation at Ex. F7a, p. 1.)

On March 1, 2004, five weeks after Rendina was terminated, his former supervisor, Douglas Godesky ("Godesky"), began informal counseling with the Merit Systems Protection Board regarding claims stemming from his own termination.  (Flynn Decl. Ex. 3 at 6.)  CMS's Office of General Counsel first became aware that Rendina would testify in Godesky's hearing before the Merit Systems Protection Board on March 15, 2004.  (Flynn Decl. Ex. 5.)

Meanwhile, on February 4, 2004, Plaintiff filed an Individual Complaint of Employment Discrimination with CMS.  (Tully Decl. Ex. A1.)  He then began informal counseling with CMS regarding his claim on March 15, 2004.  (Report of Investigation at Ex. B1, p. 2.)  After the investigation of his complaint, Mr. Rendina requested a hearing before the Equal Employment

Opportunity Commission ("EEOC").  (*Id*. at Ex. 2, p. 1.)  On September 19, 2005, a hearing was held before Administrative Judge Mary Elizabeth Palmer.  However, on October 18, 2005, the case was dismissed because Rendina withdrew his request for a hearing before the EEOC and instead asked for a Final Agency Decision from CMS regarding his complaint.  (*Id*. at Ex. 11.)

On November 28, 2005, Rendina contacted Christopher Tully ("Tully"), who represents CMS in the this lawsuit, and requested that Tully "both e-mail [the Final Agency Decision] . . . and fax a copy to me."  (Tully Decl. Ex. 12.)  When CMS failed to produce the decision, Rendina filed a lawsuit in this Court (Case No. RDB-06-1223) on May 12, 2006, seeking such production.  After the lawsuit was filed, CMS attempted to serve on Rendina its Final Agency Decision via certified mail on June 26, 2006.  (Pereira Decl. ¶ 4.)  However, the package containing the Final Agency Decision was refused by a "D. Long."  (*Id.* ¶ 5.)  On July 28, 2006, Tully sent the Final Agency Decision to the e-mail address Rendina requested.  (Tully Decl. Ex. 14.)  On August 4, 2006, Plaintiff responded to Tully's e-mail saying he was "confused" by it and asking CMS to serve him again via certified mail.  (Tully Decl. Ex. 15.)  On August 10, 2006, CMS attempted to serve Rendina by mail.  (Pereira Decl. ¶ 6.)  CMS claims that Rendina received his Final Agency Decision on August 14, 2006, but has offered no evidence on the matter.

On November 9, 2006, Plaintiff filed an Amended Complaint in his first lawsuit which was also filed as a Complaint in a new lawsuit (Case No. RDB-06-3082).  As the Amended Complaint in RDB-06-1223 and the Complaint in RDB-06-3083 are identical, the two cases were ultimately consolidated by Court Order on March 9, 2007 (Paper No. 13).  Counts I, II, and III of the Complaint, respectively, assert that Rendina was terminated on the basis of his gender,

an alleged disability,[1] and in retaliation for testifying in Godesky's employment action in

violation of Title VII and the ADA.  Count IV alleges that the internal investigation of his

internet activity by CMS staff violated his rights under the Privacy Act.  Finally, Count V asserts

that Defendant's failure to file a Final Agency Decision pursuant to 29 C.F.R. § 1614.110(b)

violated the Administrative Procedure Act.  On February 12, 2007, Defendant submitted the

subject Motion to Dismiss or, in the alternative, for Summary Judgment.  (Paper No. 7.)

## STANDARDS OF REVIEW

### I.     Motion to Dismiss

#### A.     Rule 12(b)(1)

Defendant has moved to dismiss Count IV of Plaintiff's Complaint for lack of subject

matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  "The

plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal

court."  *Biktasheva v. Red Square Sports, Inc.*, 366 F. Supp. 2d 289, 294 (D. Md. 2005).  A court

may "consider evidence outside the pleadings" in a 12(b)(1) motion to determine if it has

jurisdiction over the case.  *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945

F.2d 765, 768 (4th Cir. 1991).  "The court should grant the 12(b)(1) motion only if the material

jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of

law."  *Biktasheva*, 366 F. Supp. 2d at 294 (quoting *Richmond*, 945 F.2d at 768).

#### B.     Rule 12(b)(6)

---

[1]     Rendina claims that he has Attention Deficit Disorder ("A.D.D.").  He bases this assertion on comments made by his ex-wife, a licensed clinical psychologist, and a teammate on a neighborhood softball team, who is alleged to be a licensed psychiatrist.  There is absolutely no medical documentation of any kind with respect to Rendina having A.D.D.

Defendant seeks to dismiss the remainder of Rendina's action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  "'[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of a complaint'" and not to "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999)). As the legal sufficiency of the complaint is challenged under a Rule 12(b)(6) motion, the court assumes "the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations."  *Eastern Shore Mkts. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).  A Rule 12(b)(6) motion to dismiss "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief."  *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325 (4th Cir. 2001); *see also Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005).  Furthermore, the "Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Rather, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Migdal*, 248 F.3d at 325-26; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).  However, while "notice pleading requires generosity in interpreting a plaintiff's complaint . . . generosity is not fantasy."  *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 191 (4th Cir. 1998).

In reviewing the complaint, the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman*, 417 F.3d at 420*; Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The court must disregard the contrary allegations of the opposing party. *A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969). However, in considering a motion to dismiss, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments" nor "the legal conclusions drawn from the facts." *Eastern Shore Mkts., Inc.,* 213 F.3d at 180; *see also Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 329 F. Supp. 2d 574, 578 (D. Md. 2004).

## II.    Summary Judgment

The Defendant alternatively moves for summary judgment, which is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences

drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). However, the opponent must bring forth evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). "Once the movant has established the absence of any genuine issue of material fact, the opposing party has an obligation to present some type of evidence to the court demonstrating the existence of an issue of fact." *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW,* 187 F.3d 415, 422 (4th Cir. 1999)). Rule 56(e) also requires that "affidavits submitted by the party defending against a summary-judgment motion contain specific facts, admissible in evidence, from an affiant competent to testify, 'showing that there is a genuine issue for trial.'" *Id.* (quoting 10B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2740, 399 (3d ed. 1998)). The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *Anderson*, 477 U.S. at 252.

This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted). Indeed, this Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

## DISCUSSION

## I.       Dismissal under Rule 12(b)(6)

As an initial matter, CMS argues that the subject Rule 12(b)(6) motion should be treated

as a motion for summary judgment.[2]  (Def.'s Mem. Supp. Mot. Summ. J. 23.)  Rule 12(b) states:

> If, on a motion asserting the defense numbered (6) to dismiss for
> failure of the pleading to state a claim upon which relief can be
> granted, matters outside the pleading are presented to and not
> excluded by the court, the motion shall be treated as one for summary
> judgment and disposed of as provided in Rule 56, and all parties shall
> be given reasonable opportunity to present all material made
> pertinent to such a motion by Rule 56.

*See Talbot v. U.S. Foodservice, Inc.*, 191 F. Supp. 2d 637, 639 (D. Md. 2002) (treating motion to

dismiss as motion for summary judgment where the Court had to consider "two items of

evidence extrinsic to the pleadings" including the plaintiff's E.E.O.C. charge); *Talbot v. U.S.*

*Foodservice, Inc.*, 204 F. Supp. 2d 881 (D. Md. 2002) (same).  However, the Fourth Circuit has

created an exception such that "when a defendant attaches a document to its motion to dismiss,

'a court may consider it in determining whether to dismiss the complaint [if] it was integral to

and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'"

*Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004) (citations omitted);

*see also Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006); *Corporate Healthcare*

*Fin., Inc. v. BCI Holdings Co.*, 444 F. Supp. 2d 423, 427 n.10 (D. Md. 2006); *Popoola v. MD-*

*Individual Practice Ass'n, Inc.*, 230 F.R.D. 424, 427 (D. Md. 2005).  None of the documents

submitted to this Court have been challenged for authenticity.  Therefore, to the extent CMS asks

this Court to consult extrinsic documents that Rendina relies upon in his Complaint, the subject

---

[2] As Rendina's Privacy Act claim is challenged for lack of subject matter jurisdiction
pursuant to Rule 12(b)(1) rather than 12(b)(6), it cannot be converted to a motion for summary
judgment.

motion must be treated as a motion for summary judgment.

CMS presents documents relating to Plaintiff's EEOC hearing, the internal investigation of Rendina's Title VII claims, and the declarations of a number of Rendina's former co-workers. Rendina's Complaint did not rely on any of these documents. Thus, under the *American Chiropractic* standard, Defendant's Motion to Dismiss must be treated as a motion for summary judgment with respect to Counts I, II, and III. However, the arguments before this Court regarding Plaintiff's Administrative Procedure Act claim do not explicitly rely on any information extrinsic to the Complaint. Therefore, this Court will examine Rendina's APA claims under the standards established by Federal Rule of Civil Procedure 12(b)(6).

## II.    Timeliness

This Court notes a second prefatory matter raised by Defendant: the timeliness of Plaintiff's discrimination claims. CMS contends that Rendina was served on August 4, 2006, and, therefore, he did not file his Complaint within the 90-day time limit of 42 U.S.C. § 2000e-16(c) and 29 C.F.R. § 1614.407(a). (Def.'s Mem. Supp. Summ. J. 23-25.) CMS made several attempts to serve Rendina. The first attempt to serve him *via* certified mail failed when the package containing the Final Agency Decision was refused by a third party. (Pereira Decl. ¶ 5.) The second attempt was made *via* e-mail by Tully on July 28, 2006. (Tully Decl. Ex. 14.) Rendina did not respond to this e-mail until August 4, 2006 and in his e-mail stated that he was "confused" by the manner in which CMS was attempting to serve him his Final Agency Decision. (Tully Decl. Ex. 15.) Although CMS contends that Rendina had already been served the Final Agency Decision, the agency mailed a copy of the document to him on August 10, 2006. (Pereira Decl. ¶ 6.) Defendant contends that, because Rendina responded to an e-mailed

version of the Final Agency Decision on August 4, 2006, he had effective notice of his ability to

file a suit in this Court within 90 days and did not avail himself of this right.  (Def.'s Mem. Supp.

Summ. J. 24; Tully Decl. Ex. 15.)  In response, Plaintiff argues that he was "technically

homeless", "frequently uses email on Public Library computers", and was unable to obtain the

Final Agency Decision in a readable format until he received it *via* certified mail on August 14,

2006.  (Pl.'s Mem. Opp'n Summ. J. 16-17.)  He asks this Court to either equitably toll the 90-day

time limit contained in the statute or refuse to recognize the government's attempted service via

e-mail.  (*Id*. at 18-22.)

 The 90-day time limit set out in 42 U.S.C. § 2000e-16(c) and 29 C.F.R. § 1614.407(a)

began when Rendina received CMS's notice of his ability to file suit *via* certified mail.  When

examining the meaning of "receipt" in § 2000e-16(c), the Supreme Court has held that when

"Congress intends to depart from [a] common and established practice of providing notification,

 . . . it must do so expressly."  *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92-93 (1990)

(finding that 42 U.S.C. § 2000e-16(c) did not change the established rule of service on a party's

attorney being considered service on the party).  Just as the Supreme Court found that § 2000e-

16 did not modify traditional rules regarding service on counsel, this Court cannot find that it

modifies the traditional means of service to allow for service though e-mail.  As a result, this

Court finds that Rendina was not served by CMS until he received the Final Agency Decision

*via* certified mail on August 14, 2006.  Hence, Rendina's Complaint, which was filed 87 days

later, is timely under 42 U.S.C. § 2000e-16(c) and 29 C.F.R. § 1614.407(a)

 Even if this Court were to allow for service through e-mail, the statute of limitations

should be tolled because Rendina did not have adequate notice that he had to file a claim within

ninety days of Tully's e-mail.  The time limitations contained in Title VII are not a jurisdictional

bar to this Court's adjudication of Plaintiff's discrimination claims.  *See Zipes v. Trans World*

*Airlines, Inc.*, 455 U.S. 385, 394 (1982) (noting that the filing requirements of Title VII "[are]

not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of

limitations, is subject to waiver, estoppel, and equitable tolling."); *cf.* H.R. REP. NO. 95-950, at

12 (1972), *reprinted in* 1978 U.S.C.C.A.N. 504, 534 (explaining that the time limit contained in

the Age Discrimination in Employment Act, which is modeled on Title VII "is not a

jurisdictional prerequisite to maintaining an action. . . .").  Moreover, inadequate notice is a

recognized basis for tolling this statute of limitations.  *See Baldwin County Welcome Ctr. v.*

*Brown*, 466 U.S. 147, 151 (1984) (noting that inadequate notice can be grounds for tolling the

statute of limitations in 42 U.S.C. §§ 2000e, *et seq.*).  Here, Rendina did not have adequate

notice of the determinations contained in the Final Agency Decision and his ability to challenge

those determinations in this Court, because he could not properly view the e-mailed document

due to his indigent status.  (Pl.'s Mem. Opp'n Summ. J. 16-17.)  As a result, this Court could toll

the statute of limitations contained in 42 U.S.C. § 2000e *et seq.*  Accordingly, this Court will

consider Plaintiff's Complaint in light of the standards of review articulated above.

**III.     Count I: Title VII Sex Discrimination**

Plaintiff first claims that he was discriminated against because of his sex.  (Compl. ¶¶ 25,

29, 32.)  Specifically, he alleges three discriminatory events: no female employee's résumé was

investigated, no female employee's internet activities were investigated, and he was terminated

because of these discriminatory actions.  (Compl. ¶¶ 25, 29, 32.)

Absent any direct evidence of employment discrimination, a plaintiff must satisfy the

three-step burden-shifting test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

First, he must present sufficient evidence to prove a *prima facie* case of discrimination.  *Reeves*

*v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142-43 (2000).  Second, once the plaintiff

establishes a *prima facie* case, the burden shifts to the defendants to produce evidence that the

adverse employment actions were taken against the plaintiff "for a legitimate, nondiscriminatory

reason."  *Id.* at 142 (citing *Tex. Dept. Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).

Third, the plaintiff is "afforded the 'opportunity to prove by a preponderance of evidence that the

legitimate reasons offered by the defendant[s] were not [their] true reasons, but were a pretext

for discrimination.'"  *Id.* (quoting *Burdine*, 450 U.S. at 253); *see also Holland v. Wash. Homes,*

*Inc.*, 487 F.3d 208, 214 (4th Cir. 2007) (noting that "the burden shifts back to [the plaintiff] to

prove by a preponderance of the evidence that the employer's stated reasons were not its true

reasons, but were a pretext for discrimination." (citations and quotation marks omitted)).

Rendina alleges two forms of discrimination in his complaint: disparate treatment and

discriminatory termination.

Rendina alleges that Trudel's investigations of his résumé and internet usage were in and

of themselves discriminatory prior to any action being taken.  The Fourth Circuit Court of

Appeals has held that, "[t]o prevail on a Title VII claim, 'the existence of some adverse

employment action is required.'"  *Holland,* 487 F.3d at 219 (quoting *James v. Booz-Allen &*

*Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)).  Such an action must "adversely affect the

terms, conditions, or benefits of the plaintiff's employment."  *James*, 368 F.3d at 375.  Simple

investigations into an employee's résumé and internet usage have no bearing on the terms,

conditions, or benefits of his employment.  In this case, the information obtained during Trudel's

investigations may have contributed to Rendina's termination, but the searches themselves were not adverse employment actions.  Thus, any claims that the investigations themselves were discriminatory cannot survive summary judgment.

As to his allegations of discriminatory termination, Rendina must demonstrate that: "(1) he is a member of a protected class; (2) he was qualified for his job and his job performance was satisfactory; (3) he was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances."  *Bryant v. Bell Atlantic*, 288 F.3d 124, 133 (4th Cir. 2002) (citations omitted); *cf. Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1228 (4th Cir. 1998) (explaining that, absent direct evidence, discriminatory intent cannot be found when "[no] other employee had nearly the same problems . . . across the board").

In this case, Rendina fails to demonstrate the elements of a *prima facie* claim of discriminatory termination.  It is undisputed that he is a member of a protected class (male) and that he was fired.  However, Rendina has not demonstrated that his job performance was satisfactory.  Rendina's record of sub-standard job performance is voluminous.  While he claims that his own job performance was satisfactory given the work that had been "dumped in his lap" (Pl.'s Mem. Opp'n Summ. J. 8), a plaintiff's own statements, absent corroborating evidence, will not establish that his work was satisfactory.  *See King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003) (finding that when an employer offers "substantial evidence . . . chronicling a [plaintiff's] poor performance and his supervisors numerous concerns", the plaintiff's own testimony is not sufficient to create a genuine issue of material fact); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996) (highlighting that "[i]t is the perception of the decision maker that is relevant, not the self-assessment of the plaintiff." (citations omitted)); *cf. Goldberg*

*v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988) (pointing out that "naked opinions" and "[c]onclusory assertions" about the state of mind of an employer are not sufficient to demonstrate discrimination against a plaintiff).  CMS has extensively chronicled Rendina's less than satisfactory performance.  The undisputed evidence before this Court shows a pattern of Plaintiff turning in work that was either incomplete or had serious inaccuracies.  (Wark Supplemental Decl. ¶¶ 3-4, 6-7; Wark Aff. ¶ 10; Trudel Aff. ¶ 10.)  A number of employees also pointed out that Rendina was not willing to assist others and was frequently out of the office.  (Wark Aff. ¶ 13; Bradford Aff. ¶ 7.)  As CMS has provided this Court with numerous independent assessments of Plaintiff's performance and Rendina relies only on his own assessment of his performance, this Court cannot find that Plaintiff has met his burden of showing he has a *prima facie* claim of discriminatory termination.  Accordingly, Defendant's Motion for Summary Judgment is GRANTED as to Count I.

## IV.      Count II: Disability Discrimination

Plaintiff claims that he was discriminated against because he has Attention Deficit Disorder, in violation of the Americans with Disabilities Act ("ADA").[3]  (Compl. ¶ 37.)  CMS contends that there are no genuine issues of material fact regarding whether Rendina has a disability and that, therefore, it is entitled to judgment as a matter of law on his ADA claim.  (Def.'s Mem. Supp. Summ. J. 35.)

---

[3]      Rendina also argues that "Defendant failed to make reasonable accommodations for [his] disability. . . ."  (Compl. ¶ 38.)  The Americans with Disabilities Act plainly states that a plaintiff must have proof of having a disability and his employer must have knowledge of this disability.  42 U.S.C. §12112(b)(5)(A).  As this Court finds Rendina has failed to present evidence of sufficient probative value to forecast a genuine issue of material fact regarding whether he had A.D.D., Plaintiff has also failed to present a genuine issue of material fact regarding reasonable accommodation.

Under the ADA, it is unlawful for an employer to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . [the] discharge of employees. . . ." 42 U.S.C. § 12112(a) (2007).  In the absence of direct evidence of discrimination, this Court follows the familiar tripartite burden-shifting process set forth in *McDonnell Douglas*, as discussed *supra* in Part III.  In order to meet his initial burden of establishing a *prima facie* case under the ADA, Rendina must present evidence to "show: '(1) that he has a disability, (2) that he is a 'qualified individual' for the employment in question, and (3) that [his employer] discharged him (or took other adverse employment action) because of his disability.'" *Overstreet v. Calvert County Health Dep't*, 187 F. Supp. 2d 567, 572 (D. Md. 2002) (quoting *E.E.O.C. v. Stowe-Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th Cir. 2000)).  Plaintiff's claim cannot survive summary judgment because he has not created a genuine issue of material fact as to the first element of the *prima facie* case.

The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (2007).  The definition of a disability has been extended to include "[a]ny mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2) (2007).  However, these mental illnesses must make the claimant "[u]nable to perform . . . or [s]ignificantly restrict[] . . . [the] manner or duration under which an individual can perform a particular major life activity as compared to

. . . the average person in the general population. . . ." 29 C.F.R. § 1630.2(j)(i)-(ii) (2007).

In this case, Rendina has not introduced any evidence that he in fact has A.D.D.  He contends that he has the disorder because his ex-wife, who was a clinical psychologist, stated he had the affliction on their first date and because a teammate in an adult softball league echoed the same conclusion on a different occasion.  (Rendina Aff. ¶ 2.)  However, Rendina concedes that these conclusions were not arrived at through clinical observation or testing.  There is also no evidence that Rendina's alleged condition made him unable to perform or significantly limited his ability to perform certain major life functions.[4]  Even viewing the facts in the light most favorable to Rendina, he has not forecasted sufficient evidence of an impairment that substantially limited a major life activity to create a genuine issue of material fact.  In addition, there is no evidence that Rendina had a "record of impairment."  Finally, Plaintiff was not regarded as having a disability.  In fact, the only testimony on the subject indicates that Rendina's alleged condition was *not* obvious to his coworkers.  (Trudel Aff. ¶ 6; Wark Aff. ¶ 6-7.)  As a result, Plaintiff has simply failed to forecast a genuine issue of material fact with regard to the first element of an ADA claim.

Even if he could prove that he had such a disability, there is no evidence that he was fired because of it.  Trudel's letter to Rendina clearly explained that he was terminated because of his unsatisfactory job performance and improper use of a government computer.  (Report of Investigation at Ex. F7a, p. 1.)  In addition, Trudel, who decided to terminate Rendina, testified that "[t]he reason for the termination was that [Rendina] did not improve his performance."  (Trudel Aff. ¶ 10.)  Plaintiff has simply offered no evidence of any probative force indicating

---

[4]       This Court need not examine the exact definition of a "major life activity" as Plaintiff has failed to show that *any* of his activities were limited by his alleged condition.

that Trudel's statements about her own decision making process are inaccurate.  Thus, Rendina has failed to show the third element of a *prima facie* case for an ADA claim.  Accordingly, CMS's Motion for Summary Judgment is granted as to Count II.

## V.       Count III: Title VII Retaliation

Rendina next argues that CMS terminated him in retaliation for testifying in a hearing on behalf of his former supervisor before the Merit Systems Protection Board.[5]  (Compl. ¶ 36.) Defendant contends that Plaintiff has failed to show the elements of a *prima facie* claim for Title VII retaliation under the *McDonnell Douglas* burden-shifting analysis.  (Def.'s Mem. Supp. Summ. J. 32.)

To state a claim for retaliation, an employee must show (1) that he engaged in a protected activity, (2) that his employer took an employment action against him that a reasonable employee would have found materially adverse, and (3) that there was a causal connection between the protected activity and the adverse employment action.  *Burlington Northern & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006); *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 298 (4th Cir. 2004) (en banc).  As to the first element, Rendina alleges that he was fired because CMS knew he would testify in a hearing on behalf of Douglas Godesky ("Godesky'), his former supervisor, before the Merit Systems Protection Board.  Protected activities expressly include "oppos[ing] any practice made an unlawful employment practice" and "testif[ying] . . . in

---

[5]       Both parties seem to recognize the principle clearly set forth by the United States Court of Appeals for the Fourth Circuit in *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992), that a plaintiff "may raise [a] retaliation claim for the first time in federal court."  *See Lauer v. Schewel Furniture Co.*, 84 Fed. Appx. 323, 328 (4th Cir. 2004); *Allen v. Rumsfeld*, 273 F. Supp. 2d 695, 704 (D. Md. 2003); *Daso v. Grafton Sch., Inc.*, 181 F. Supp. 2d 485, 489 (D. Md. 2002). Thus, the Plaintiff's failure to check a box for retaliation in his EEOC charge does not preclude his retaliation claim in this case.

an investigation, proceeding, or hearing" pursuant to Title VII.  42 U.S.C. § 2000e-3.  Regardless

of whether Rendina's testimony qualified as participation in a Title VII investigation or simply

opposing an unlawful employment practice, he certainly engaged in a protected activity. As to the

second prong pf the *prima facie* test, being fired is clearly a materially adverse employment

action.  Thus, Plaintiff has satisfied the first and second elements of his retaliation claim.

As to the third element, however, Rendina has failed to introduce sufficient evidence to

create a genuine issue of material fact as to the reason for his termination.  Clearly, in order to

show that he was fired for engaging in a protected activity, Rendina must introduce evidence that

his supervisor in fact had knowledge of the participation.  *See Tinsley v. First Union Nat'l Bank*,

155 F.3d 435, 444 (describing the fact that an employee's supervisor had no knowledge of her

participation in a protected activity as "[t]he nail in the coffin of [her] *prima facie* case . . .").  In

this case, Godesky's grievance was not brought to CMS's attention until five weeks *after*

Rendina's termination.  (Flynn Decl. Ex. 3 at 6.)  Nonetheless, Rendina argues that CMS knew he

would testify in this action and preemptively fired him in retaliation for this anticipated adverse

testimony.  (Pl.'s Mem. Opp'n Summ. J. 26.)  Rendina claims that CMS knew about his

testimony because "[t]o expect Mr. Godesky would pursue his arbitration without calling [him] as

a witness defies logic."  (*Id*. at 27.)  Even viewing these facts in the light most favorable to

Plaintiff, a reasonable jury could not find that Trudel terminated Rendina in an act of preemptive

retaliation.  She simply had no knowledge that a claim would be brought by a former employee

before the Merit Systems Protection Board much less that Rendina would testify at such a

hearing.  (*See* Wark Aff. ¶ 6.)  As a result, Plaintiff has failed to forecast evidence of sufficient

probative value to indicate a genuine issue of material fact regarding his Title VII retaliation

claim, and Defendant's Motion for Summary Judgment is GRANTED as to Count III.

## VI.    Count IV: The Privacy Act

In Count IV of the Complaint, Rendina claims that the search of his computer and investigation into his internet usage "violated [his] rights as specified in the Privacy Act." (Compl. at 8, ¶ 4.)  Defendant argues that this Court lacks subject matter jurisdiction over the Privacy Act claim because it was time-barred.[6]

The Privacy Act generally prohibits the disclosure of "any record which is contained in a system of records . . . to any person, . . . except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains. . . ."  5 U.S.C. § 552a(b) (2007). Section 552a(g)(5) of Title 5 of the United States Code explains how a Privacy Act claim should be filed and the specific circumstances in which the filing deadline can be extended:

> An action to enforce any liability created under this section may be brought in the district court of the United States in which the complainant resides . . . within two years of the date on which the cause of action arises, except that where an agency has materially and willfully misrepresented any information required under this section to be disclosed to an individual and the information so misrepresented is material to establishment of the liability of the agency to the individual under this section, the action may be brought at any time within two years after discovery by the individual of the misrepresentation.

While the Fourth Court of Appeals has not ruled on the subject, other Circuit Courts of Appeal have found that the two-year time period contained in 5 U.S.C. § 552a(g)(5) is jurisdictional in nature.  *See Dilberti v. United States*, 817 F.3d 1259, 1262 (7th Cir. 1987)

---

[6]    Defendant raises the additional argument that Trudel's request for information from Plaintiff's computer fell within the "need to know exception" contained in 5 U.S.C. § 552(B)(1).  (Def.'s Mem. Supp. Summ. J. 39-40.)  Since this Court finds that Plaintiff's Privacy Act claim is untimely, Defendant's arguments regarding this exception need not be reached.

(explaining that "[t]he statutory time limitation, however, is unquestionably an integral condition of the sovereign's consent to be sued under the Privacy Act.  Accordingly, we hold that a plaintiff's failure to file suit within the time period specified § 552a(g)(5) deprives the federal courts of subject matter jurisdiction over the action."); *Harrell v. Fleming*, 285 F.3d 1292, 1293 (10th Cir. 2002) ("Failure to file a Privacy Act claim against the government within the statute of limitations is jurisdictional . . . The statue of limitations qualifies the waiver of immunity and constitutes a limitation on subject matter jurisdiction." (internal citations omitted)).

In this case, Rendina's affidavit of July 18, 2004 indicates that he was aware at the time that his computer was being searched by CMS staff.  (Rendina Aff. ¶ 19, July 18, 2004.)  Even though he knew that his computer records were likely being disseminated to other people without his consent, Rendina did not file a Privacy Act claim until November 9, 2006, over two years later.  (Compl. ¶ 34.)  As a result, this Court need not examine Plaintiff's Privacy Act claim any further as it does not have the subject matter jurisdiction to proceed in resolving this issue.[7]  Accordingly, Defendant's Motion to Dismiss Count IV is GRANTED.

## VII.    Count V: The Administrative Procedure Act

---

[7]        Even if this Court were to disagree with the decisions of the Seventh and Tenth Circuit Courts of Appeal and hold that the two-year time limit is not jurisdictional in nature, Rendina has still not presented this Court with facts allowing it to toll the statute of limitations. Equitable tolling is used "only sparingly. . . . where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where [he] has been induced or tricked by his adversary's misconduct. . . ." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).  The case before this court is not one of affirmative misconduct, but rather one of bureaucratic inefficiency.  CMS notes that there was a substantial backlog of EEOC cases in its Office of Employment Opportunity and Civil Rights during the time that Rendina's claim was being investigated.  (Pereira Decl. ¶ 3.)  Even if this Court were to break with the rulings of other Courts of Appeal, Rendina still fails to demonstrate grounds for tolling the statute of limitations here.  As a result, Plaintiff would still fail to state a claim for relief.

Rendina asserts that CMS "violated [his] rights as specified in the Administrative Procedures Act." (Compl. at 8, ¶ 5.) The only procedural deficiency alleged in the Complaint is that CMS was delayed in producing Rendina's Final Agency Decision. (Def.'s Mem. Supp. Summ. J. 41.)

When an administrative judge has not rendered a final decision in a matter, "[t]he agency shall issue the final decision within 60 days of receiving notification that a complainant has requested an immediate final decision. . . ." 29 C.F.R. § 1614.110(b) (2007). In this case, Rendina withdrew his request for a hearing before Administrative Judge Mary Elizabeth Palmer issued a formal ruling and instead requested that CMS issue a final agency decision ("FAD"). The order dismissing the EEOC proceeding was issued on October 18, 2005. Thus, in order to comply with the 60-day requirement, CMS would have had to issue the FAD by December 17, 2005. Rendina did not receive a copy of the FAD until after he filed a lawsuit in this Court in May of 2006, well after the 60-day period. Accordingly, CMS did not comply with the APA's requirements.

However, even though CMS should have filed its FAD in a timely manner, Rendina has no cause of action at this time. The APA provides that a court may "compel agency action unlawfully withheld or unreasonably delayed. . . ." 5 U.S.C. § 706(1) (2007). Thus, this Court's authority to enforce the 60-day requirement ended when CMS issued its FAD, albeit late. The APA does permit a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" to seek judicial review of the agency action. 5 U.S.C. § 702 (2007). However, that does not apply in this case because Count V of the Complaint alleges that the agency *failed to act in a timely manner*; the substance

of the FAD is not challenged in the APA claim.  Thus, Plaintiff has not stated a cause of action

under the APA.

CMS raises as an additional argument that Rendina failed to state a claim under the APA

because CMS's conclusions, as contained in the Final Agency Decision, are the subject matter of

a subsequent court action and therefore fall within the exception in 5 U.S.C. § 554(a)(1):

> This section applies . . . in every case of adjudication required by
> statute to be determined on the record after opportunity for an agency
> hearing, except  to the extent that there is involved . . . a matter subject
> to a subsequent trial of the law and the facts de novo in a court. . . ."

This exception is not relevant here, because the violation alleged—CMS's delay in issuing a final

agency decision—does not implicate section 554.  While Rendina asked this Court to conduct a

*de novo* review of his employment discrimination claims by means of a trial, he has not alleged

any violations of that particular section of the APA.  *See Laber v. Harvey*, 438 F.3d 404, 423 (4th

Cir. 2006) (noting that "a plaintiff [in a Title VII action] is entitled to a *de novo* hearing if one is

requested.").

As a result, Plaintiff fails to state a claim for a violation of the APA and Defendant's

Motion to Dismiss is GRANTED as to Court V.

As a final matter, Rendina states in his Complaint that a "motion for sanctions" to recover

the costs of having to file a lawsuit to force CMS to issue a Final Agency Decision is "still

pending."  (Compl. ¶ 18.)  While Rendina never filed an actual motion for sanctions, this Court

will interpret that paragraph as a request for sanctions.  Neither party presented any legal

authority on the matter of sanctioning an agency for failure to comply with its obligations under

the APA, and this Court was unable to find any authority in its own independent research.  The

scope of a federal court's review of an agency's failure to act is limited to "compel[ling] agency

action unlawfully withheld or unreasonably delayed. . . ."  5 U.S.C. § 706(1) (2007).  There is no

provision for any kind of monetary relief or penalty.  Accordingly, this Court will deny Plaintiff's

request for sanctions.

### **CONCLUSION**

For the reasons stated above, Defendant's Motion for Summary Judgment is hereby

GRANTED as to Counts I, II, and III of Plaintiff's Complaint.  In addition, Defendant's Motion

to Dismiss is GRANTED as to Court IV, which is dismissed without prejudice, and as to Count V

which is dismissed with prejudice.  A separate Order and Judgment follows.


/s/_____
Richard D. Bennett
United States District Judge


Dated: July ___, 2007